H. Dean Steward  SBN 85317
107 Avenida Miramar, Ste. C
San Clemente, CA 92672
949-481-4900
Fax: (949) 496-6753

Attorney for Defendant
MOHAMED SALAH

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, <br><br>　　　　Plaintiff, <br><br>vs. <br><br>MOHAMED SALAH, ET. AL. <br><br>　　　　Defendants. | Case No. SA-CR-13-01-AG <br><br> SENTENCING BRIEF <br><br><br> DATE: APRIL 9, 2018 <br><br> TIME: 1:30 PM |

Comes now defendant, together with counsel, and submits the below objections and suggestions for the Court's consideration at sentencing.

Dated: 3-26-18　　　　　　　s./ H. Dean Steward
　　　　　　　　　　　　　　　H. Dean Steward
　　　　　　　　　　　　　　　Counsel for Defendant
　　　　　　　　　　　　　　　Mohamed Salah

- 1 -

## I. Introduction

Appearing before the Court is a 44 year old citizen of Cuba, having been convicted after trial on one count of conspiracy to commit bank and wire fraud. This quiet, mild mannered man deeply regrets his association with Ali Khatib, a bully and crook of enormous proportion. Mr. Salah's other career accomplishments include delivering pizzas for Pizza Hut[1], working in a chicken restaurant, selling bargain basement art work at swap meets, and his current occupation- used car sales. His work schedule is 7 days a week, sometimes as many as 70+ hours per week.

Mr. Salah was a minor player in a much larger drama, led and orchestrated by Ali Mustafa Khatib and others. He worked at the Khatib companies of Faris Realty/Event Marketing for approximately 13 months, from August of 2008 to September of 2009.

## II. PSR- Objections and Suggestions

Mr. Salah and counsel have both reviewed and discussed the Pre-Sentence Report herein. The defense has the following objections and comments.

*A. Objections*

► Para 23- Mr. Salah denies ever "identifying mortgage lenders" or "submitting loan applications". He had no part in these activities.

► Para 27- Again, Mr. Salah had nothing to do with "submitting loan applications". RT 3-19-15, p. 117.

► Para 28- Mr. Salah *directed no one* at Khatib's companies at any time.

► Para 32- Defendant had no role in decision making in distributing any funds for any one at any time.

► Para 36- Mr. Salah did not "receive payments". He was given checks to take to the bank and cash, returning 100% of the funds to Ali Khatib. Khatib confirmed these facts during cross-examination at trial. Mr. Salah received only his salary

---

[1] Mr. Salah earned $8 an hour, plus modest tips.

throughout his association with Khatib and his companies. He initially earned $2,000 per month[2], then later received a raise to $3,000 per month. Indeed, during most of his work for Khatib, Mr. Salah had to have a second nighttime job, delivering pizzas, to make ends meet.

The government has created a chart showing checks going to Mr. Salah in the amount of $824,842.71. Other than paychecks, Mr. Salah vehemently denies getting any of this money. He never received commissions of any kind. RT 3-13-15, p. 130. Mr. Salah was a pawn and errand boy in the money laundering scheme of Ali Khatib and others.

► Para 37 through 46- Mr. Salah denies any role in the Antelope Valley or Phoenix properties described. At Para 43, Mr. Salah did make that deposit, but as explained above, he was told by Khatib and others what to do. Others also secured and used Mr. Salah's bank statement as described at Para 44.

► Para 47 & 48- loss amounts, please see below.

*B. Role in the Offense*

Trial testimony supports the defense position that Mr. Salah should receive a role reduction of two levels- minor role under U.S.S.G. § 3B1.2(b). He was "substantially less culpable" than Ali Khatib, Wajieh Tbakhi, Aref Abaji, Jacqueline Burchett and Maher Obaji.

Other than his salary, he did not profit from the scheme. His role, as alleged by the government, was to alter documents for submission with loan packages[3]. The government also alleged that he posed as employers in phone calls to verify employment with banks.

---

[2] Khatib trial testimony 3-13-2015, p. 130.
[3] "[Salah] was fabricating these fake documents, the W-2s, the bank statements, the tax returns, the pay stubs. That was his job." Testimony of Mohamed El-Tahir- 3-19-15, p. 37.

However, he did not assemble or submit the loan packages[4]. He did as he was instructed in creating the false documents, and doing other menial administrative tasks. He also did not plan or organize the criminal activity. He had no decision making authority, and he supervised no one. His only benefit was his modest salary, and he did not share in the other proceeds of the fraud. He was not essential to the scheme, and was in fact terminated more than once by Khatib. He did not socialize with the others in the company[5], did not drink alcohol, and never entered a bar.

He was unaware of the full scope of the scheme. He was only convicted of a single count, unlike the others charged. He was listed 6th out of 6 defendants on the indictment.

*C. Loss Amount- Para 59-*

Typically, the Government is required to prove the relevant loss amount by a preponderance of evidence standard. *United States v. Sunchild*, 648 F. App'x 595, 598 (9th Cir. 2016). However, when a sentencing enhancement causes a "disproportionate impact," as it does here, the clear and convincing proof standard must be applied. *United States v. Treadwell*, 593 F.3d 990, 1000 (9th Cir. 2010).

The loss chart drawn up by the government and given to the defense is presumably a summary of records provided by lenders. In that chart, however, the Government has failed to state how it has calculated these losses and the information underlying the charts. Unfortunately, Probation seems to simply adopt the government's loss calculations on their face. [See PSR §47, 48, & 59].

---

[4] Witness El-Tahir also testified that he never saw Mr. Salah submit documents to any bank. 3-19-15, p. 117.

[5] Mr. Salah never socialized with the others. Khatib trial testimony 3-13, 2015, p. 136.

1  To the extent that the Government wishes to hold Mr. Salah accountable for
2 theses losses, it must prove by clear and convincing evidence that the loans were
3 obtained fraudulently and in furtherance of the conspiracy for which Mr. Salah was
4 convicted.

**III. 18 USC §3553(a) Factors**

● Mr. Salah's Subservience

Highlighted during trial was the dominance of Ali Khatib over Mr. Salah. Salah was treated almost like a servant by Khatib, and some of the others in the company. In the beginning, Mr. Salah served as a "go-for"- getting lunches[6], making bank deposits and the like.

● Devastating Immigration Consequences to the Salah Family

Mr. Salah is a citizen of Cuba. The felony conviction here will almost certainly cause him to be deported, although current relations with Cuba and the U.S. seem unsteady at best. The "drastic measure" of deportation or removal is now virtually inevitable for a vast number of noncitizens convicted of crimes. *Padilla v. Kentucky* 130 S.Ct. 1473 (2010).

Should he be deported, Mr. Salah's family will suffer greatly. His wife has been a stay-at-home Mom, and has never had a job in the United States.

● Support from Family and Friends

From the people who know Mr. Salah best come the following comments, excerpted from the letters to the Court, attached as Exhibit "A":

/
/
/
/

---

[6] Khatib's trial testimony, 3-13-15, p. 127

- "Mohamed is a good man, a good citizen, husband, father and son, and as his father, I am proud of him and his accomplishments..."

Juan Morales-Galindo
Mr. Salah's father

- "He is my hero, and he always will be. And he is a role model for our daughter and son."

Tamara Alhussian
Mr. Salah's wife

- "Mohamed Salah is a hard worker and always works to provide for his family."

Mohamed Daly
Family friend

- "There aren't many I would recommend, as to the character of most. I proudly recommend this man. And I would stand beside him at a moment's notice."

Susan Hair
Co-Worker

- "We have found him to be one of the nicest, most humble and honest [persons] we have ever met."

Bill and Catherine Andrus
Family friends

- "...I honestly admire Mohamed and his family, and look at them as an example of how every person and family should live their life."

Jim Ferras
Family friend

/
/
/
/

■ " Mr. Salah and his family helped me during my sickness as I was diagnosed with breast cancer; they supported me during my surgery and during my treatment until I recovered my health."

Doura Alhussain
Sister-in-law

These people, both friends and family, see the real Mohamed Salah, often on a daily basis. Their opinions are backed by experience and heart-felt evaluation. Perhaps this is the essence of "personal factors" under 18 USC §3553(a).

## IV. *Apprendi* and Sentencing in This Case

Under the Supreme Court's decision in *Apprendi v. New Jersey* 530 U.S. 466 (2000), "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt." *Id.* at 476.

Here, Guideline factors including loss amount and 10 or more victims enhancements boosts Mr. Salah's sentence, and were not submitted to the jury. Although the Ninth Circuit has held that the Guideline range may be increased based on judicial fact finding, the defense believes that this violates the 6th Amendment and *Apprendi*, and wish to preserve this issue for further review.

## V. Bail on Appeal

As the Court has previously recognized, the events that took place at the end of the trial herein were significant, and caused several hours of hearings. Mr. Salah requests that the Court consider bail on appeal, so that the 9th Circuit can review the issue, and others in the case.

The standard for bail on appeal is that the Court must find:

    (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
(i) reversal,
(ii) an order for a new trial,
(iii) a sentence that does not include a term of imprisonment, or
(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Here, Mr. Salah has never been found to be a flight risk or a danger to the community. As to "substantial questions of law or fact", this Court stated on the record that bail on appeal for these two defendants was likely, due to the important issues surrounding the government's failure to notify the defense that their witness Ms. Saad had been under criminal investigation for fraud, a colorable *Brady* violation. RT 3-25-15, Vol. I, p. 20-21.

## VI. Conclusion

    For the reasons set out above, and in particular the factors under 3553(a), the defense suggests a sentence of a year and a day, together with bail on appeal. Such a sentence would be fair and reasonable, considering all the facts and circumstances presented herein.

    The defense computes the Guidelines as follows:

| | |
|---|---|
| Base offense level | 7 |
| 10+ victims | +2 |
| Loss (not adequately proven) | 0 |
| Minor role | -2 |

1  Criminal History Category              I

2

3       The Probation Officer has recommended a variance of 13 months below the
4  bottom end of the PSR set Guideline. This assume an adequately proven loss amount,
5  which the defense disputes.
6       Factoring in the totality of the 3553(a) factors set out above, the defense
7  recommended sentence of a year and a day is fully justified.

8

9

10  Dated: 3-26-18                  s./ H. Dean Steward
                                    H. Dean Steward
11                                  Counsel for Defendant
12                                  Mohamed Salah

# CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED THAT:

I, H. Dean Steward, am a citizen of the United States, and am at least 18 years of age. My business address is 107 Avenida Miramar, Ste. C, San Clemente, CA 92672.

I am not a party to the above entitled action. I have caused, on 3-26-18, service of the defendant's:

**Sentencing Brief**

On the following parties electronically by filing the foregoing with the Clerk of the District Court using its ECF system, which electronically notifies counsel for that party.

**AUSA Kerry Quinn**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 3-26-18

s./ H. Dean Steward

H. Dean Steward